**STATE of Tennessee, Plaintiff–Appellee,**

v.

**Lawrence MONTGOMERY, Defendant–Appellant.**

Supreme Court of Tennessee, at Jackson.

Oct. 26, 1992.

Charles W. Burson, Atty. Gen. & Reporter, Joel W. Perry, Asst. Atty. Gen., Nashville, for plaintiff-appellee.

Ted I. Jones, Memphis, for defendant-appellant.

## OPINION

REID, Chief Justice.

This case presents an appeal from the judgment of the Court of Criminal Appeals affirming the denial of a petition for post-conviction relief. The record fails to establish that the guilty pleas accepted by the trial court were knowing and voluntary; the defendant, therefore, is entitled to have the subject convictions vacated.

The defendant was sentenced to life imprisonment following a 1986 conviction for aggravated rape as enhanced by a finding of habitual criminal status based, in part, on guilty pleas entered on January 11, 1973, to two counts of grand larceny and two counts of escape. The defendant challenges the validity of the 1973 guilty pleas on the basis that they were not voluntarily and knowingly entered.

The defendant alleges and the transcript of the 1973 hearing shows that the trial court did not advise the defendant of the right against compulsory self-incrimination. That right was omitted from the court's explanation of the rights waived upon the entry of a plea of guilty. In addition, there is no evidence in the record indicating that the defendant, in fact, knew that he could not be compelled to testify. At the post-conviction hearing, he denied having such knowledge and further stated that had he known that he had the right not to testify he would have gone to trial.

The State acknowledges that the defendant was not advised of the privilege against self-incrimination at the time the guilty pleas were accepted. The State argues, however, that "there is nothing in the record to indicate that the guilty plea[s] [were] not knowing and voluntary" and that the omission complained of is harmless error. The State's position indicates a misunderstanding of the circumstances in which the failure to advise a defendant of the privilege against self-incrimination can be harmless error.

This Court recently addressed a trial court's failure to inform a defendant of the privilege against self-incrimination in the context of taking guilty pleas in *Johnson v. State*, 834 S.W.2d 922 (Tenn.1992). The applicable legal principles were stated as follows:

It is the result, not the process, that is essential to a valid plea. The critical fact is the defendant's knowledge of certain rights, not that the trial judge was the source of that knowledge.

\*    \*    \*    \*    \*    \*

[A]n allegation that the petitioner was not aware of his constitutional rights is not the same as the allegation that the petitioner was not advised by the trial court of those rights. Obviously, the petitioner actually may have been aware of his constitutional rights even though the trial court failed to advise him of them and failed to determine at the plea

hearing that petitioner was aware of his rights.

\*     \*     \*     \*     \*     \*

However, if, as in the case at bar, the record shows by clear and convincing evidence that the plea was knowing and voluntary, then the petitioner is not entitled to relief.

*Johnson* at 924–25.

■ When a defendant makes a charge supported by the evidence that the trial court failed to advise him of his right against self-incrimination, as in the instant case, the burden then shifts to the State. *Johnson* at 925. Thereafter, "the State may rebut the allegation with proof of substantial compliance with the advice requirement, which would show that the petitioner was made aware of his constitutional rights, or the State may alternatively show that the petitioner was aware of his constitutional rights and that therefore the trial court's failure to give the mandated advice was harmless error." *Id.* at 925.

The Court found in *Johnson* that even though the defendant was not advised of the privilege against self-incrimination, he nevertheless was aware of this right. Specifically, the Court held that the trial court's failure to advise the defendant of that constitutional right was harmless error because "the record shows that the petitioner was aware of his right against self-incrimination." *Johnson* at 926. *Johnson* is consistent with *State v. Neal*, 810 S.W.2d 131 (Tenn.1991) where the defendant was not advised of the privilege against self-incrimination at the time guilty pleas were received. Like the defendant in *Johnson*, the defendant in *Neal* was aware of that right nonetheless. *Neal* at 138. Accordingly, the Court held that "[s]ince the purpose of the litany of rights is to insure that the defendant is aware of them when he or she gives them up, no possible harm to Neal is demonstrated." *Id.* at 138.

■ As was true with the defendants in *Neal* and *Johnson*, the defendant in the instant case was not made aware of the privilege against self-incrimination at the guilty plea hearing. The transcript of that hearing reveals that the trial court advised the defendant of all constitutional rights mandated by *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) except self-incrimination. However, unlike the situation in *Neal* and *Johnson*, there is no evidence in this case that the defendant was, in fact, aware of the privilege against self-incrimination, despite his not being advised of that right by the trial judge. Upon cross-examination by the Assistant District Attorney General at the post-conviction hearing, the following exchange took place:

Q: [I]n January of 1973 when your guilty plea was entered, you knew—you knew—that you had the right—a constitutional right—to testify or not testify if you went to trial. You knew that, didn't you?

A: Not really.

Q: You didn't?

A: Honestly, not really.

Q: You didn't think that you could talk to the jury?

A: Not really.

Q: You didn't know?

A: I'm being honest. You asked me the question; let me [be] honest with you.

This brief colloquy between the Assistant District Attorney General and the defendant represents the sum total of the testimony presented at the post-conviction hearing concerning the defendant's awareness of the right against self-incrimination. When asked if it would have made any difference had he known of the right, the defendant replied that "[i]t would have because I would have went to the jury."

The State has failed to carry its burden of showing that the trial court's failure to give the mandated advice was harmless error in accordance with the dictates of *Johnson* and *Neal*. The predicate for this assertion is the lack of evidence tending to

show that the defendant was aware of the omitted advice. The State did not rebut the defendant's testimony that he was unaware of the right against self-incrimination or that had he been aware of the right, he would have gone to trial. The facts presented in this case do not meet the requirement that a knowing and voluntary plea includes the intentional relinquishment or abandonment of *known* rights. *Johnson* at 923; *State v. Mackey,* 553 S.W.2d 337, 340 (Tenn.1977). It is the defendant's lack of knowledge of his right against self-incrimination, not the trial court's failure to be the source of that knowledge, that sets this case apart from *Johnson* and *Neal,* and requires a contrary result.

■ The cross-examination of the petitioner in this case presents an issue which, perhaps in the abundance of caution, merits attention. At the hearing on the petition, the petitioner was asked, "[I]n January of 1973 when your guilty plea was entered, you knew—you knew—that you had the right—a constitutional right—to testify or not testify *if you went to trial.* You knew that, didn't you?" (Emphasis added.) A short review of the required procedure will show that the right against self-incrimination applies to the guilty plea hearing as well as the jury trial which the defendant is waiving.

In *Boykin,* the United States Supreme Court extended the same standards developed for the admissibility of a confession and for the waiver of counsel to the submission of a guilty plea. The Court said:

A guilty plea is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment. Admissibility of a confession must be based on a "reliable determination on the *voluntariness* issue which satisfies the constitutional rights of the defendant." *Jackson v. Denno,* 378 U.S. 368, 387 [84 S.Ct. 1774, 1786, 12 L.Ed.2d 908 (1964)]. The requirement that the prosecution spread on the record the prerequisites of a valid waiver is no

constitutional innovation. In *Carnley v. Cochran,* 369 U.S. 506, 516 [82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962)], we dealt with a problem of waiver of the right to counsel, a Sixth Amendment right. We held: "Presuming waiver from a silent record is impermissible. The record must show that an accused was offered counsel but *intelligently* and *understandingly* rejected the offer. Anything else is not waiver."

We think the same standard must be applied to determining whether a guilty plea is voluntarily made.

*Boykin, supra,* 395 U.S. at 242, 89 S.Ct. at 1711–12 (emphasis added).

■ Thus, in order to guarantee that a guilty plea is voluntary and not the product of "[i]gnorance, incomprehension, coercion, terror, inducements, subtle or blatant threats," the trial court must insure that a defendant who pleads guilty has knowledge of his rights and understands that he is waiving those rights by pleading guilty. *Id.* at 242–43, 89 S.Ct. at 1712. The United States Supreme Court described the essentials of a valid waiver in *Boykin* as follows:

Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment. . . . Second, is the right to trial by jury. . . . Third, is the right to confront one's accusers. . . . We cannot presume waiver of these three important federal rights from a silent record.

What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequences.

*Id.* at 242–244, 89 S.Ct. at 1712.

In *State v. Mackey,* 553 S.W.2d 337, 341 (Tenn.1977), this Court adopted virtually verbatim the requirements of Federal Rule

of Criminal Procedure 11(c), (d), (f), and (g), governing the acceptance of guilty pleas, and, as an "exercise of its supervisory power to insure that the courts of this State afford fairness and justice to defendants in criminal cases," held that "stricter standards than those mandated by the *Boykin* decision" would henceforth be required. *Id.* at 340–41. A year after *Mackey* was decided, the Tennessee Rules of Criminal Procedure took effect, and guilty pleas in this state became subject to the requirements of Tennessee's version of Rule 11, which is substantially the same as the federal version, as well as to the requirements of *Mackey.*

In both *Mackey* and Rule 11(c)(3), the advice mandated is "and *at that trial* has the right ... not to be compelled to incriminate himself." (Emphasis added.) However, in *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), decided the year after *Boykin,* the Court emphasized the applicability of the advice to the plea hearing itself. There, the Court said:

> That a guilty plea is a grave and solemn act to be accepted only with care and discernment has long been recognized. Central to the plea and the foundation for entering judgment against the defendant is the defendant's admission in open court that he committed the acts charged in the indictment. *He thus stands as a witness against himself and he is shielded by the Fifth Amendment from being compelled to do so*—hence the minimum requirement that his plea be the voluntary expression of his own choice.

*Brady, supra,* 397 U.S. at 747–48, 90 S.Ct. at 1468–69.

■ This analysis emphasizes that in order to comply with *Boykin,* a trial court must ensure that the defendant's guilty plea—his "judicial confession" which preempts a trial—is voluntary and not the product of compulsion. The form of the advice given with regard to his constitutional rights should embrace the right not to make incriminating statements at the plea hearing as well as at any trial which may be had. The advice, obviously, should be given at the guilty plea proceeding before the defendant has made any incriminating statement, and the record should reflect that the defendant voluntarily waived his rights after being properly advised.

Even though the form of the advice mandated by Rule 11 and *Mackey* emphasizes the right against compulsory self-incrimination at the trial, advice given in that form would constitute compliance with *Boykin* except in the most extraordinary factual situations in which the defendant could demonstrate that he reasonably understood the advice related to any future trial but not the guilty plea proceeding.

In view of the foregoing, the guilty pleas entered on January 11, 1973, and the convictions thereon, are hereby vacated. The case is remanded for any further proceedings which may be necessary. Costs will be taxed to the appellee.

DROWOTA, O'BRIEN, DAUGHTREY and ANDERSON, JJ., concur.